293 F.2d 738
 ASSOCIATED SECURITIES CORPORATION, a Utah corporation, and Norman B. Jenson, Petitioners,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
In the Matter of Associated Securities Corporation, a Utah corporation.
 No. 6514.
 United States Court of Appeals Tenth Circuit.
 July 21, 1961.
 
 George F. Barbary, Denver, Colo. (David L. McKay, Salt Lake City, Utah, was with him on the brief), for petitioners.
 Walter P. North, Gen. Counsel, Washington, D. C. (David Ferber, Asst. Gen. Counsel, Sidney D. Goldberg, Special Counsel, Washington, D. C., and Richard M. Phillips, Atty., Securities and Exchange Commission, Washington, D. C., were with him on the brief), for respondent.
 Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 We have here a petition under Section 25(a) of the Exchange Act[1] to review an order of the Securities and Exchange Commission revoking the registration of petitioner Associated Securities Corporation and naming petitioner Jenson as the cause of such revocation.
 
 
 2
 Associated was registered as a broker and dealer in securities under § 15 of the Exchange Act.[2] In the period February, 1958 to March, 1959 Jenson was the executive vice-president and treasurer of Associated. Section 15(b) provides for the registration of brokers and dealers and for the revocation of such registration if the Commission finds that the revocation is in the public interest and that the broker or dealer has violated any provision of the Securities Act[3] or of the Exchange Act.[4] The Commission found that Associated and Jenson had wilfully violated § 17(a) of the Securities Act[5] prohibiting fraudulent interstate security transactions and § 10(b) of the Exchange Act[6] prohibiting the use of manipulative and deceptive devices and Rule 10b-5 thereunder.[7] The Commission also found that Associated, aided and abetted by Jenson, had wilfully violated § 15(c) (1) of the Exchange Act[8] prohibiting the use of the mails or any instrumentality of interstate commerce in the purchase or sale of any security by means of a manipulative, deceptive, or fraudulent device and had also violated Rule 15c1-2 thereunder.[9] Under the provisions of § 15A(b) (4) of the Exchange Act[10] the practical effect of the Commission's order as to Jenson is to make it impossible for Jenson to be employed by a member of the National Association of Securities Dealers.
 
 
 3
 The basis of the charge against the petitioners is that Associated committed a fraud on its customers in the sale of stock of New Hemisphere Life Insurance Company at prices not reasonably related to the prevailing market price without disclosing that fact to such customers. Petitioners claim that this charge is not established by substantial evidence.
 
 
 4
 New Hemisphere sold its stock to Utah residents under installment contracts providing for forfeiture upon 45 days notice for failure to pay installments due. Jenson, acting for Associated, made an arrangement with New Hemisphere whereby Associated undertook to collect balances due on 60 to 80 installment contracts. Between February 3 and June 5, 1958, Associated purchased 1,100 shares of New Hemisphere stock from 33 investors for $57,539 at an average cost of $52.30 per share. During the same period it sold 1,017 of these shares for $86,230 or an average price of $84.78 per share. If the cost of the 83 unsold shares is not included, the markup was 61.9%. During this period five Salt Lake City registered brokers and dealers dealt in New Hemisphere stock at $48 to $51.50 per share. Two nonregistered individuals dealing in the stock made sales at $75 to $100 per share.
 
 
 5
 The Commission found that the prices charged by Associated were not reasonably related to the market; that failure to disclose the current market price to prospective purchasers rendered materially false its express and implied representations that the prices were reasonably related to the current market price; and that representations that the market price had and would increase like that of other insurance companies were materially false and misleading.
 
 
 6
 The purpose of the statutes involved here is to protect investors.[11] Findings of fact by the Commission, if supported by substantial evidence, are conclusive.[12] Sales at excessive markup prices without disclosure of market values have been held a violation of the Securities Act.[13] A dealer's own contemporaneous cost, in the absence of countervailing evidence, indicates prevailing market price.[14]
 
 
 7
 Petitioners do not seriously contest these principles but seek to distinguish this situation on the grounds that the purchases were of contracts, not stock; that the purchases were made from persons in default under their New Hemisphere subscription contracts and hence in distress; and that there was substantial countervailing evidence. The record does not sustain these contentions. Their own exhibits refer to purchases of shares rather than contract rights. Additionally, 176 shares were purchased from shareholders rather than contract holders. The purchases were not made as a result of distress sales as New Hemisphere had not invoked the forfeiture provisions of the installment contracts and Associated was aware of the desire of New Hemisphere not to take advantage of the forfeiture provisions. The evidence of other sales at prices comparable to the sale prices of Associated, at the most, created a conflict in the evidence. The question of the market price of a security handled on an over-the-counter basis is one calling for the exercise of the expertise of the Commission and its findings in that regard may not be upset by the courts if supported by substantial evidence.
 
 
 8
 Petitioners insist that there is no substantial evidence to support the Commission finding that it was in the public interest to revoke the registration of Associated.[15] The supporting argument is bottomed on the theory that there could have been an honest difference of opinion as to the market price and hence the conduct was not wilful. The balancing of private detriment against public harm requires the fair and proper exercise by the Commission of its discretionary powers. The evaluation of facts and the exercise of judgment for the protection of investors dealing in over-the-counter securities is a function assigned by Congress to the Commission rather than the courts and the exercise by the Commission of its discretionary powers will not be upset by the courts except for cogent reasons.[16] An examination of the entire record establishes that the revocation of the Associated registration was based on substantial evidence and that the Commission did not abuse its discretion.
 
 
 9
 Petitioner Jenson urges that the Commission could not legally find him to be the cause of the revocation of the Associated registration under Section 15A(b) (4) (C) of the Exchange Act[17] because of the provisions of paragraph (m)[18] of that section which make it inapplicable to transactions in exempted securities and because Section 3(a) (11) of the Securities Act[19] exempts securities sold, as in the instant case, only to persons "resident within a single State." This argument falls for two reasons. First, paragraph (m) is a part of the Exchange Act and the reference to exempted securities must refer to those exempt under that Act — not those exempt under the Securities Act. In the Exchange Act the term "exempted security" is specifically defined and does not include those with which this case is involved.[20] In the second place, if the Securities Act does apply the Section 3 (a) (11) exemption does not control because a violation was charged and found of the anti-fraud provisions of that Act contained in § 17[21] and § 17 specifically provides in its paragraph (c)[22] that the Section 3 exemptions do not apply to fraudulent transactions involving the use of the mails. While the transactions were with Utah residents, the mails were used.
 
 
 10
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 15 U.S.C.A. § 78y(a)
 
 
 [2]
 15 U.S.C.A. § 78o.
 
 
 [3]
 15 U.S.C.A. § 77a et seq
 
 
 [4]
 15 U.S.C.A. § 78a et seq
 
 
 [5]
 15 U.S.C.A. § 77q(a)
 
 
 [6]
 15 U.S.C.A. § 78j(b)
 
 
 [7]
 17 C.F.R. 240.10b-5
 
 
 [8]
 15 U.S.C.A. § 78o(c) (1).
 
 
 [9]
 17 C.F.R. 240.15c1-2
 
 
 [10]
 15 U.S.C.A. § 78o — 3(b) (4).
 
 
 [11]
 Stadia Oil & Uranium Company v. Wheelis, 10 Cir., 251 F.2d 269, 275
 
 
 [12]
 15 U.S.C.A. § 78y(a)
 
 
 [13]
 Charles Hughes & Co. v. Securities and Exchange Commission, 2 Cir., 139 F.2d 434, 436, certiorari denied 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077. In the Hughes case the markups ranged from 16.1% to 40.9%
 
 
 [14]
 Hughes, supra, 139 F.2d at page 439
 
 
 [15]
 Section 15(b), 15 U.S.C.A. § 78o(b) authorizes revocation if the Commission finds such revocation "is in the public interest."
 
 
 [16]
 Associated Securities Corp. v. Securities and Exchange Commission, 10 Cir., 283 F.2d 773, 775
 
 
 [17]
 15 U.S.C.A. § 78o — 3(b) (4) (C).
 
 
 [18]
 15 U.S.C.A. § 78o — 3(m).
 
 
 [19]
 15 U.S.C.A. § 77c(a) (11)
 
 
 [20]
 Section 3(a) (12) of the Exchange Act, 15 U.S.C.A. § 78c(a) (12)
 
 
 [21]
 15 U.S.C.A. § 77q
 
 
 [22]
 15 U.S.C.A. § 77q(c)